UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TERRY L. DAY, | Case No. 1:13-cv-547 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| NATIONAL ELECTRICAL<br>CONTRACTORS ASSOCIATION, et al., | |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I. Factual and Procedural Background

On August 7, 2013, through counsel, Plaintiff filed a complaint against three entities that he identified as his former "employer," including the National Electrical Contractors Association, the International Brotherhood of Electrical Workers Local #648, and the Butler County Electrical Joint Apprentice and Training Committee.  (Doc. 1 at ¶10).  Plaintiff subsequently dismissed without prejudice two of the Defendants, leaving only Butler County Electrical Joint Apprentice and Training Committee (hereinafter "Butler JATC").  Defendant Butler JATC successfully moved to dismiss, for failure to state a claim, three of five claims originally included in the complaint - wrongful termination under state law, intentional infliction of emotional distress, and violations of the Rehabilitation Act.  (See Doc. 19).  Defendant has now moved for summary judgment on the only two remaining claims against it, brought pursuant to the Americans with Disabilities Act.  Defendant filed proposed undisputed facts in support of

1

its motion, which the undersigned has largely accepted based upon Plaintiff's failure to dispute them.[1] For the reasons that follow, the undersigned now recommends that judgment be granted in favor of the Defendant.

Plaintiff began an apprenticeship with the Butler JATC in August 2010. Prior to his apprenticeship, Plaintiff received an associate's degree. Plaintiff also previously served in the United States Navy from 1998 until June 29, 2004, with an inactive obligation until June 29, 2006 at which time he was honorably discharged. It is undisputed that Plaintiff has irritable (obstructive) bowel syndrome, which he testified places no limitations on his activities. While unrelated to the claims asserted in this lawsuit, Plaintiff also has permanent nerve damage in his left leg, which limits his ability to exercise, but nothing else. Also unrelated to this lawsuit, Plaintiff suffers from hypertension, a condition that does not limit any activities.

The Committee of the Butler JATC is composed of six individual members, three of whom are appointed by the International Brotherhood of Electrical Workers, Local Union No. 648, and three of whom are appointed by the National Electrical Contractors Association, Cincinnati Chapter. The Butler JATC's goal is to provide the electrical construction industry with the most highly trained and highly skilled workforce possible. It accomplishes that purpose through a rigorous five-year apprenticeship program that includes both classroom and on-the-job training. The Butler JATC views the classroom, hands-on training as just as important as on-the-job training. As part of the

---

[1] In response to a motion to summary judgment, Judge Dlott's standing order (as well as that of the undersigned) requires the opposing party to formally identify, in writing, with appropriate citation to evidence of record, any "proposed undisputed facts" that is disputed. Plaintiff's failure to do so technically waives any objection. *See, e.g., Potter v. District of Columbia,* 558 F.3d 542, 548 (D.C. Cir. 2009); *Gosselin v. Webb*, 242 F.3d 412, 414 n.2 (1st Cir. 2001); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2001). Defendant additionally points out that Plaintiff served no timely discovery requests and took no depositions.

2

apprenticeship program, the JATC requires apprentices to attend, at a minimum, at least "180 hours of related classroom training per year, outside the normal work hours." To advance in the program, the apprentice must complete both the 180 hour minimum classroom training and the on-the-job training requirements.

Apprenticeship applicants are required to affirmatively state on their application that they are able and willing to attend all related classroom training. In his application, Plaintiff specifically affirmed that he was "able and willing to attend all related classroom training as required to complete [his] apprenticeship." (Napier Decl. ¶26; Doc. 24-2 at PageID 225, Day Depo. at Def. Ex. 10, Apprenticeship Application, Question 19). As part of acceptance into the program, the apprentice also agrees to comply with all rules and policies issued by the JATC. One of those policies explains that all apprentices serve a probationary period during which they are not members of IBEW Local 648:

> The first 2,000 hours of OJT [on-the-job training] and satisfactory performance in related classroom training during such time shall constitute the probationary period. During this period, the apprenticeship period may be cancelled by either party without the formality of a hearing.
>
> Prior to the end of the probationary period, action must be taken on each probationary apprentice to end the probation, extend the probation, or cancel the apprenticeship agreement. All interested parties shall be notified of such action.

(Napier Decl. ¶17; Doc. 24-4 at PageID 243-44, Day Depo. at Ex. 11, Training Standards Sec. XII). The JATC's Statement of Policy reiterates the annual requirement of 180 hours of related coursework, as well as that all apprentices remain on probationary status during their first 2,000 hours of on-the-job training.

The JATC's Statement of Policy includes a special note on absenteeism:

> The committee has adopted a policy that three (3) absences from class requires an appearance before the Committee. It is at the discretion of the committee to forgive any absence from School. For each unexcused

3

> absence the apprentice will receive a 30 day penalty. After five (5) or more unexcused absences from class in any one year the apprentice will be dropped from the program or required to repeat the year at the discretion of the committee. It is the responsibility of the apprentice to <u>explain in writing</u> why he was absent by the next class to his instructor.

(Napier Decl. ¶21; Doc. 24-5 at PageID 263, Day Depo., Def's Ex. 12, Statement of Policy, p. 6, emphasis in original). The above policy remained in effect until September 11, 2011, when it was modified as follows:

> There will be no excused absences. Each Apprentice will get one free night. The second absence will be a 30 day penalty, third absence will be 60 day penalty, fourth absence will be 90 day penalty & the fifth absence, you will be terminated from the program unless deemed otherwise by the committee.

(Napier Decl. ¶22; Doc. 23-7 at PageID 175, Day Depo., at Def's Ex. 7, Day000008, New Absentee Policy). All apprentices, including Plaintiff, were given a copy of the new policy on or about August 30, 2011. Plaintiff also acknowledged both that he had received and that he had actually read the Training Standards and Statement of Policy prior to starting his apprenticeship.

Plaintiff recalls missing 16 classes in his first and second years for a variety of reasons. Despite advising Butler JATC in January 2011 that "I have NO physical restrictions or limitations that would prevent me from performing the assigned duties of my job," and testifying that none of the statements in his January 2011 letter changed during his apprenticeship, Plaintiff still missed many classes. After Plaintiff missed multiple classes his first year, he was required to appear before Butler JATC committee members on March 1, 2011. During that meeting, committee members asked Plaintiff is he would be able to improve his attendance and whether he needed a reasonable accommodation to do so. In response, Plaintiff denied needing any reasonable

4

accommodations, and promised to be more vigilant regarding classroom attendance. The Committee permitted Plaintiff to continue in the program based on that representation.

After March 1, 2011, Plaintiff missed two more classes during his first year of the program without providing any reason for his absences, in violation of the Statement of Policy. Butler JATC thereafter amended its absentee policy for the 2011-2012 school year. During Plaintiff's second year in the program, he missed a total of five classes. He did not report the reason for his absences by the next class, again in violation of the Statement of Policy. Instead, he was silent, and could not recall if all of the absences were related to his irritable bowel syndrome until he was called before the Committee a second time in February 2012. The record reflects that he notated a February 7, 2012 paper documenting the absences by stating that one absence was a "free day," that two absences were due to his visiting his aunt and attending a funeral, and that two absences were "Illness due to disability." (*See* Doc. 24-9, Exh. 16, PageID 276).

In March 2012, Plaintiff remained in his probationary period because he had not yet completed 2,000 hours of on-the-job training. Butler JACTC terminated Plaintiff's probationary apprenticeship on March 5, 2012. Although Plaintiff alleges that he was terminated because he took too many bathroom breaks, he has failed to submit any evidence to support that allegation. Instead, the evidence offered by Defendant unequivocally shows that his dismissal was based upon his chronic absenteeism. During the EEOC investigation,[2] the EEOC similarly noted that "the only record on file related to the topic of disability accommodations is a letter from you with your signature

---

[2]The EEOC letter explained that the investigator intended to recommend dismissal of the charge based on evidence that Plaintiff was terminated for absenteeism, and the absence of any "evidence that you requested a reasonable accommodation." (Doc. 24-14). The EEOC subsequently dismissed the charge and issued Plaintiff Notice of his Right to Sue.

to Mr. Napier dated January 10, 2011 stating, 'As I previously indicated, I have absolutely NO physical restrictions or limitations that would prevent me from performing the assigned duties of my job.'" (Doc. 24-6 at PageID 267 and 199-200, Day Depo. at 169-70; Doc. 24-14 at PageID 281, Day Depo. at Ex. 21). Plaintiff re-affirmed his January 2011 statement after the March 1, 2011 Committee meeting.

Plaintiff understood that he was not an employee of the Butler JATC at the beginning of his apprenticeship, and testified that he does not disagree with that statement. It is undisputed that Butler JATC has never employed Plaintiff, has never paid him for any services, and has never issued him either an IRS Form W-2 or an IRS Form 1099.

## II. Analysis

Defendant has filed a combined motion for summary judgment pursuant to Rule 56 and a motion for judgment on the pleadings pursuant to Rule 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the same standards applicable to motions filed under Rule 12(b)(6), for failure to state a claim. Because I conclude that summary judgment is appropriate on the record presented, it is unnecessary to determine whether Defendant is also entitled to judgment on the pleadings pursuant to Rule 12(c).

### A. Summary Judgment Standard

In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c))(internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Under Rule 56, the moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, through evidentiary sources listed in Rule 56(c) and/or by pointing out the failure of the nonmoving party to produce any evidence which would create a genuine dispute, the nonmoving party cannot merely rest on its pleadings, but instead must demonstrate that there is a genuine issue for trial. *Id.*, 477 U.S. at 324. "The mere presence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson, v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). As Defendant points out, it is somewhat striking that in this case, Plaintiff cites record evidence only twice, and otherwise relies (inappropriately) only on the allegations in his complaint.

**B. Defendant's Motion**

Under the ADA, "employers are prohibited from discriminating against a qualified individual with a disability because of his or her disability in employment matters, such as hiring, advancement, and discharge." *Regan v. Faurecia Auto Seating, Inc.*, 679 F.3d 475, 479 (6th Cir. 2012). Plaintiff brings two closely related claims against

Defendant under the ADA: a failure to accommodate claim, and a termination claim.

### 1. Elements of Plaintiff's claims

In order to establish a failure to accommodate claim, Plaintiff must show that: (1) he is disabled under the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *See Johnson v. JPMorgan Chase & Co.*, 922 F. Supp.2d 658, 666-667 (S.D. Ohio, 2013)(citing *Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 982-83 (6th Cir. 2011).

> A failure to accommodate claim "unavoidably 'involve[s] direct evidence (the failure to accommodate) of discrimination' because the employer necessarily relied on the worker's disability in making decisions." *Cash v. Siegel–Robert, Inc.,* 548 Fed.Appx. 330, 334, 2013 WL 6231791, at *4 (6th Cir. Dec. 3, 2013) (quoting *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 868–69 (6th Cir.2007)). Accordingly, the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) does not apply.

*Kovac v. Superior Dairy, Inc.*, 998 F. Supp. 2d 609, 619 (N.D. Ohio 2014). An employer will be entitled to judgment if a Pilantiff fails to establish that he requested and was denied a reasonable accommodation, as the employer has no duty to provide a reasonable accommodation absent such a request. *Id.*

To the extent that Plaintiff also relies on direct evidence for his termination claim, Plaintiff is required to show: (1) he is disabled and (2) he is "otherwise qualified" for the position despite his disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. If he makes that preliminary showing, the employer must show (3) that a challenged job criterion is essential, and therefore a business necessity, or that a

8

proposed accommodation will impose an undue hardship upon the employer. *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996).

However, unlike a failure to accommodate claim, a plaintiff alternatively may prove a discrimination claim under the ADA through indirect evidence. To the extent that Plaintiff is attempting to prove his termination claim through circumstantial evidence, the *McDonnell Douglas* burden-shifting approach applies. Under that approach, Plaintiff may establish his claim by showing that he:

> (1) …is disabled; (2) [is] otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times.

*Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004)(quoting *Monette*, 90 F.3d. at 1186–87 and *Walsh v. United Parcel Serv.,* 201 F.3d 718, 724–25 (6th Cir.2000)).

### 2. Whether Butler JATC Was Plaintiff's Employer

As a threshold issue, Butler JATC argues that it is not and never was Plaintiff's "employer," and that Plaintiff was never its "employee," as defined under the Americans With Disabilities Act. *See* 42 U.S.C. §§12111(4), (5). Plaintiff's complaint repeatedly alleges that Defendant "terminated Plaintiff's employment," and that he was "in the employment" of and/or "employed" by the Defendant. (*See, e.g.*, Doc. 1 at 2; id. at ¶¶6, 10, 11, 12, 16, 20, 22, 23). Thus, while Plaintiff's complaint does not explicitly define Defendant as an "employer" as defined under the ADA, it very strongly implicitly does

9

so. However, Plaintiff agreed in his deposition that he was not and never was employed by the Butler JATC. (Doc. 24 at PageID 191-92, Day Depo. at 137-138).

Plaintiff's response appears to make two arguments: (1) that this Court should still view Butler JATC as his "employer" pursuant to 42 U.S.C. §12111(5), notwithstanding his own testimony to the contrary; and/or (2) that even if not a traditional "employer," Defendant was still a "covered entity" required to comply with the ADA.[3] With regard to his primary argument, Plaintiff contends that his own testimony is only one factor to be considered, that remuneration is not the decisive factor, and that other factors – including Defendant's ability to control Plaintiff's job performance and future employment opportunities through the apprenticeship program – are more relevant to the determination of whether Defendant was his "employer."

Plaintiff also relies on the allegations in his complaint to "prove" that Defendant was his employer, but those allegations are clearly refuted by Plaintiff's sworn testimony and are not sufficient to defeat summary judgment. *See McNeil v. Sonoco Products Co.*, 519 Fed. Appx. 382, 383 (6th Cir., May 9, 2013)(no prima facie case stated where plaintiff failed to proffer any evidence of similarly situated employee and "instead relied – impermissibly – on argument and the allegations in his complaint"); *Walker v. Eyke*, 417 Fed. Appx. 461, 463 (6th Cir. 2011)("The party opposing a motion for summary judgment may not rest on the mere allegations…of his pleading….)(internal citation and quotation marks omitted). Although statements made in a verified complaint may at times function as the equivalent of affidavit statements, *see, e.g., Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1991), that is true only when the affidavit statements are

---

[3] Given Plaintiff's focus on the alleged "employment" relationship, it is unclear to the undersigned whether Plaintiff is making the second, distinct argument.

10

made on the basis of personal knowledge. Fed. R. Civ. P. 56(c)(4). In this case, most allegations in Plaintiff's complaint were *not* made based upon Plaintiff's personal knowledge. (Doc. 1 at PageID 11). Rather, many of the allegations are conclusory and wholly unsupported by any detail that would explain either the factual basis for the allegation or the basis for Plaintiff's knowledge. (Doc. 1 at PageID 11). Many are contradicted by Plaintiff's own deposition testimony. Thus, it is not "evident from the affidavit [or complaint herein] that the facts contained are based on personal knowledge," *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp.2d 948, 955-56 (S.D. Ohio 2000), and the mere allegations of the "verified" complaint are insufficient to defeat summary judgment.

Returning to the question of whether Defendant was Plaintiff's "employer," or Plaintiff an "employee" of the Defendant, the undersigned concludes that the answer is "no" based upon the affidavit presented by Defendant and Plaintiff's own sworn testimony. On the other hand – to the extent that Plaintiff is advocating for a second theory of liability -  the determination of whether Defendant still may be held liable for Plaintiff's ADA claims as a "covered entity" under 42 U.S.C. §12111(2), because Defendant constitutes a "joint labor-management committee," presents a closer issue. Though not cited by Plaintiff, the Equal Employment Opportunity Commission Compliance Manual ("EEOCCM") provides some guidance that supports a theory of liability under the ADA for violations that may occur in apprenticeship programs. In EEOCCM section 2-III, 2009 WL 2966755, the manual defines "Covered Individuals" for purposes of Title VII, the ADEA, and the ADA as follows:

> **3. Coverage of Training Program Applicants and Participants**
> An applicant to, or a participant in, a training or apprenticeship program is protected against discrimination with respect to admission to, or

11

> participation in, the training or apprenticeship program, *regardless of whether the individual is an "employee."* Discrimination against a participant in an apprenticeship or training program that is required prior to employment, or that commonly leads to regular employment, also constitutes discrimination against an applicant for employment, and is prohibited because it has the effect of discriminatorily denying someone an employment opportunity.

2-III COVERED PARTIES, EEOCCM s 2-III (italics added).

Defendant protests vigorously that Plaintiff never articulated any theory of liability against Defendant outside of alleging that it was Plaintiff's "employer," and points out that Plaintiff failed to amend his complaint notwithstanding Defendant's repeated denials that it was his "employer." Defendant argues that Plaintiff should not be permitted to constructively amend his theory of liability at this late date in order to defeat summary judgment, because such amendment would be highly prejudicial to Defendant. The parties engaged in no discovery on the issue of whether Defendant could be held liable as an administrator of the apprenticeship program, or whether it is in fact a "covered entity" as a qualified joint labor-management committee.

The undersigned finds Defendant's position to be persuasive, and therefore recommends summary judgment based on this threshold issue. "It is well-settled that a plaintiff may not expand [his] claims to assert new theories in response to summary judgment or on appeal." *Renner v. Ford Motor Co.*, 516 Fed. Appx. 498, 504 (6th Cir. 2013)(citing *Bridgeport Music Inc., v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)). However, in recognition that a reviewing court may decide this issue differently, the remainder of this R&R explains why Defendant is also entitled to summary judgment based upon Plaintiff's failure to show that he was "otherwise qualified" for the apprenticeship program.

12

### 3. Whether Plaintiff Is Disabled

Plaintiff's complaint alleges that Defendant discriminated against him based upon his irritable (obstructive) bowel syndrome, without any further elaboration as to how that condition limits his major life activities. The first element of a prima facie case for either an accommodation or discrimination claim under the ADA requires Plaintiff to prove that he is in fact "disabled" under the Act. In order to qualify as disabled for purposes of the ADA, Plaintiff must show that his condition "substantially limits" one or more of his "major life activities." In its answer, Defendant specifically denied that Plaintiff was disabled and pointed out that Plaintiff "did not allege how he was disabled within the meaning of the ADA," and "did not allege any impairment whatsoever that substantially limits one or more major life activities." (Doc. 20 at ¶52). For the same reason, Defendant now contends that Plaintiff's claims should be dismissed under Rule 12(c).

Defendant argues in the alternative that uncontested evidence demonstrates that Plaintiff's condition does not impact his life activities. In fact, in his deposition, Plaintiff testified that his condition limits **no** life activities, including work activities. (Doc. 23 at PageID 103, Day Depo. at 51-53). The undersigned agrees that Plaintiff's own testimony potentially provides grounds on which to grant judgment to the Defendant.

Plaintiff argues in his response that his complaint identifies "the limitations" that his obstructive bowel syndrome causes him. In ¶14 of his complaint, Plaintiff alleges that he "suffered episodic pain as a result of his disability having worsened; thereafter he sought an accommodation for excused absences in accordance with his physician's request which were granted during his first year…" (Doc. 1 at ¶14). In his response to Defendant's motion, Plaintiff more expansively argues that his "episodic

13

pain…substantially limits Plaintiff's ability to work," creating a "material question of fact." (Doc. 26 at 7-8). However, at least arguably, Plaintiff cannot create an issue of fact by denying his own deposition testimony.

On the other hand, and while not cited by the Plaintiff, substantial authority exists that the functioning of the bowels should be considered to be a major life activity. In fact, relevant regulations specifically include bowel and bladder functions as major life activities. *See* 29 C.F.R. §1630.2(i)(1)(i)-(ii); *see also generally Workman v. Frito-Lay, Inc.,* 165 F.3d 460, 467 (6th Cir. 1999)(suggesting that the jury might have found plaintiff with spastic colon to be disabled, or might have found liability based upon her employer regarding her as disabled); *Wirtz v. Ford Motor Co.*, 2008 WL 565260 (E.D. Mich. Feb. 28, 2008) (denying summary judgment based upon possibility that controlling one's bladder is a "major life activity"). Considering the record as a whole, the applicable regulations, and giving Plaintiff the benefit of the doubt on this issue, the undersigned concludes that Defendant is not entitled to judgment based upon Plaintiff's failure to show his condition limits a major life activity.

### 4. Plaintiff was not "qualified" under the Act

The second element of Plaintiff's ADA claims requires him to show that he was "otherwise qualified" for the position. The central issue of this case is whether Plaintiff's absenteeism rendered him "unqualified" to continue in the apprenticeship program. Plaintiff argues that "no presumption should exist that uninterrupted attendance is an essential job requirement, and…that a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998).

However, Defendant persuasively argues that *Cehrs* is distinguishable, and that Plaintiff's excessive absenteeism alone demonstrates that he is not a "qualified" individual for the apprenticeship program under the Act. *Cehrs* involved an employee who "had not required an extended medical leave during the last eight years." The plaintiff presented proof that her employer "routinely" granted medical leave to other employees, suggesting that her request was "reasonable" and would not have unduly burdened the employer. *Id.* at 783. Defendant points out that in other cases, the Sixth Circuit has held that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998).

Here, the Defendant made abundantly clear that regular classroom attendance was required as an essential element of the apprenticeship program. The Defendant's absenteeism policies specifically articulated the attendance requirements and likelihood of dismissal from the program if those requirements were not met. The Defendant required Plaintiff to appear before the Committee to explain his excessive absenteeism after the first year, in compliance with its policy, and tightened the attendance policy the second year. It is undisputed that the same Committee ultimately terminated him during the second year for continued violations of the absenteeism policy. Such action does not run afoul of the ADA. *See also Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418-19 (6th Cir. 2004)(pharmacy technician unqualified due to excessive absenteeism, collecting cases and holding that attendance can be an "essential function."); *Cantrell v. Nissan N. Am. Inc.*, 145 Fed. Appx. 99, 104-05 (6th Cir. 2005)(affirming summary judgment for employer because plaintiff-employee was

15

unqualified due to chronic attendance issues); *Rask v. Fresenius Med. Care N.A.*, 509 F.3d 466, 469-70 (8th Cir. 2007)("regular and reliable attendance is a necessary element of both jobs"); *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000)("Common sense dictates that regular attendance is usually an essential function in most every employment setting…."); *Waggoner v. Olin Corp.*, 169 F.3d 481, 485 (7th Cir., 1999)(employer not obligated to "tolerate erratic, unreliable attendance," internal quotation marks and citation omitted).

In his response, Plaintiff argues, *without citation to the record*, that the Defendant granted him a reasonable accommodation by excusing his excessive absences his first year, but then "denied Plaintiff the same reasonable accommodations in the second year based on its new Absentee Policy starting from September 12, 2011." (Doc. 26 at 9). In contrast to Plaintiff's unsupported argument, the record demonstrates that when Plaintiff was called before the Committee after his first year to explain his excessive absences, Plaintiff affirmatively represented that he required no accommodation by stating in writing: "I have NO physical restrictions or limitations that would prevent me from performing the assigned duties of my job." (Doc. 24 at PageID 193; Doc. 24-6 at PageID 267; 25-2 at PageID 317-18). None of the statements that he expressed in his letter to the Committee when he was first asked to explain his absences changed during his entire apprenticeship. (*Id.*) Defendant has offered additional evidence that during the meeting, Plaintiff promised to be more vigilant regarding his attendance at classes and specifically stated he needed no reasonable accommodation from Defendant. (Napier Decl. at ¶¶28-30). Plaintiff testified that no member of the Butler JATC ever said that the Committee was excusing any of his absences as a reasonable

accommodation.  (Doc. 24 at PageID 189, Depo at 127-128).

When Plaintiff was called before the Committee a second time in 2012 to explain his continued violations of the now-even-more-stringent absenteeism policy (amended September 2011), Plaintiff claimed that just two of his five absences were attributable to his alleged "disability."  By accumulating five absences from class during his second year, Plaintiff clearly violated the Defendant's written policy.  (Ex. 3, Napier Decl. ¶4). Plaintiff also violated the policy by failing to report the reason of any of his absences prior to the next class as required under the Statement of Policy.  (Doc. 25-2 at PageID 306, 309, Napier Decl. at ¶¶22, 32, 34). Plaintiff did not have a long history of consistent attendance like the plaintiff in *Cehrs*.  When he was dismissed from the apprenticeship program for excessive absenteeism in March 2012, Plaintiff was still in his probationary period, having failed to complete 2000 hours of on-the-job training.

In his response, Plaintiff seems to argue that attendance at class was not an "essential" qualification because he allegedly completed all homework assignments, received passing grades, and did not receive any complaints regarding his work during his apprenticeship. However, Plaintiff cites no evidence to rebut Defendant's evidence that Plaintiff's absenteeism placed a strain on the Butler JATC and violated its clearly articulated Training Standards, which include attendance of at least "180 hours of related classroom training per year, outside the normal work hours."  (Doc. 24-4 at PageID 237; *see also* Doc. 24-4 at PageID 243-244, 262, and 24-5 at PageID 262).  To that extent, Plaintiff has failed to contradict the overwhelming evidence put forth by Defendant that actual classroom attendance, and not merely passing grades in the classes taken, was an "essential" requirement of the apprenticeship program.

Plaintiff also contends that he has a claim of disparate treatment based upon the allegation in his complaint that Defendant "allowed accommodations for other employees who performed duties as apprentice electricians." (Doc. 26 at 11). Other than pointing to the single and conclusory allegation in his complaint, Plaintiff has offered <u>no evidence</u> that any other employee was treated differently under the absenteeism policy, much less a similarly situated employee. Defendant has specifically denied Plaintiff's unsupported allegation through affidavit. (Ex. 3, 2d Napier Decl. ¶7). Plaintiff not only has failed to offer any evidence to show that an issue of fact exists, but he testified at his deposition that he could not identify a single apprentice treated differently. (Doc. 23 at PageID 106, Day Dep. 64).

The undersigned has concluded that Defendant is entitled to judgment as a matter of law based upon Plaintiff's failure to prove his prima facie case on either claim. Even if Plaintiff had cited record evidence to support a prima facie case on his termination claim, the Defendant still would be entitled to judgment because it has offered a legitimate non-discriminatory reason for its actions (Plaintiff's excessive absenteeism in violation of its policy), and Plaintiff failed to offer any evidence that Defendant's reason was pretextual.

### 5. Construed Amendment to Assert FMLA Claim

In his response to Defendant's motion for summary judgment, Plaintiff asserts that he sought FMLA leave based on his physician's instructions, citing his complaint (Doc. 1 at ¶17). He argues that "Defendant failed to respond" to his alleged FMLA request (Doc. 26 at 11), and that "Defendant discriminated [against] Plaintiff by not granting leave under [the] FMLA." (Doc. 26 at 11). However, Plaintiff's complaint does

not set forth any claim under the FMLA, and it is far too late in the game to amend his complaint to assert a new Family Medical Leave Act claim at this time. See *Renner*, 516 Fed. Appx. at 504.

Should any reviewing court disagree, the undersigned alternatively would find that Defendant is entitled to summary judgment on any such claim, because he has failed to present evidence on the essential elements of an FMLA claim. Plaintiff's failure of proof includes, but is not limited to, evidence that Butler JATC employed fifty or more employees, and that Plaintiff was employed by Defendant for 1,250 hours over any twelve-month period. (*See, contra*, Doc. 28-1, 2d Napier Decl. at ¶5).

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 25) be **GRANTED**, that Defendant's alternative motion for judgment on the pleadings (Doc. 25) be **DENIED AS MOOT**, and that this case be **DISMISSED** with prejudice and closed.

                                       *s/Stephanie K. Bowman*
                                       Stephanie K. Bowman
                                       United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRY L. DAY,                                Case No. 1:13-cv-547

      Plaintiff,                          Dlott, J.
                                               Bowman, M.J.

     v.

NATIONAL ELECTRICAL
CONTRACTORS ASSOCIATION, et al.,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                                     *s/Stephanie K. Bowman*
                                                                     Stephanie K. Bowman
                                                                     United States Magistrate Judge